In re Robert J. TURNER, Debtor.

MANUFACTURERS HANOVER TRUST COMPANY, Plaintiff,

v.

Robert J. TURNER, Defendant.

Bankruptcy No. 81–01021–JG.

Adv. No. A81–0725.

United States Bankruptcy Court, D. Massachusetts.

Oct. 13, 1982.

Lloyd Belford, Belford & Belford, Fall River, Mass., for debtor/defendant.

David Pastor, Hayt, Hayt & Landau, Lynnfield, Mass., for plaintiff.

## MEMORANDUM

JAMES N. GABRIEL, Bankruptcy Judge.

The plaintiff, Manufacturers Hanover Trust Company ("Hanover") filed this adversary proceeding against the defendant/debtor, Robert J. Turner ("Turner") seeking a determination that a debt owed it by the debtor in the amount of $6,149.98 is excepted from discharge pursuant to 11

U.S.C. Section 523(a)(2)(A). In its first cause of action, the plaintiff contends that Turner obtained money in the form of an extension of credit from Hanover by false pretenses and false representations in that the debtor did not intend to pay for goods when he purchased them. Moreover, the plaintiff alleges that the debtor executed a materially false statement concerning his financial condition with intent to deceive Hanover when he signed sales slips evidencing these purchases. In its second cause of action, plaintiff alleges the debt was incurred through use of a false financial statement published with intent to deceive the creditor.

The debtor answered, denying the allegations. The parties engaged in discovery and a trial was held on February 17, 1982. From the Stipulation of Facts, testimony and documentary evidence, I find the following facts.

Turner filed a voluntary Chapter 7 petition on June 10, 1981. Prior to the filing of the petition, Turner had been the holder of a Mastercharge credit card (account no. 5217–1817–058–775) and a Visa Card (account no. 4120–972–610–364), both issued by the plaintiff. As of the date of the filing, Turner owed $3,341.95 on his Mastercharge and $2,753.91 on his Visa. From mid December 1980 to March 25, 1981, Turner charged $1,410.57 on his Mastercharge and made regular monthly payments. From May 5, 1981 until June 7, 1981 he charged approximately $1,300.00 on his Mastercharge. Nearly all of these purchases were made in May, and most were made in early May; only two purchases with Mastercharge were made in June.

Turner made only two Visa purchases in May of 1981 and he made regular monthly payments on the Visa until May 13, 1981. Turner accumulated new charges on his Visa in the amount of $1,131.60 from May 30, 1981 to June 9, 1981 (ten (10) days).

During all material times, Turner had a credit limit of $2,000.00 on Mastercharge and $1,000.00 on his Visa. With the exception of three cash advances of $300.00, $500.00, and $700.00, all of the subject credit purchases in May and June 1981 were $50.00 or less, which is significant because a merchant generally does not inquire about the credit status of the cardholder for such purchases. Turner had exceeded his credit when the charges were made in May and June.

The debtor's schedules indicate that he had total prefiling liabilities of $17,630.00 and $7,400.00 in assets. Turner was employed by Revival House, Fall River, Massachusetts from January to September 1981. He earned $214.00 per week plus food, lodging and automobile expenses. On June 1, 1981 Turner received notice that his employment would be terminated in September 1981. On the same day he consulted an attorney for the purpose of filing a bankruptcy petition.

The debtor contended at trial that his charge purchases were for necessities for the clients at Revival House. No corroborating testimony from either the clients or other employees was offered. He merely explained that he was required to purchase items for them and to obtain a separate receipt for each purchase. The debtor testified that he always intended to pay these bills and did not intend to defraud the creditor.

The complaining creditor seeks to have the full amount of Mastercharge and Visa bills covering purchases from January 1981 through July 1981 declared non-dischargeable. The creditor, however, ignores a fundamental characteristic of the discharge under Section 727(b), which provides:

"A discharge ... discharges the debtor from all debts that arose before the date of the order for relief ..."

Therefore, any charge purchase by which debtor obtained credit after June 10, 1981, the date of the petition, is not affected by these bankruptcy proceedings and is not discharged.

The first issue presented is whether the debtor's use of his Mastercharge and Visa credit cards during the first half of 1981 constituted obtaining property by false pretenses, a false representation or actual

fraud so as to except the liability from discharge.

11 U.S.C. Section 523(a)(2)(A) provides in pertinent part:

A discharge under Section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

(2) for obtaining money, property, services, or an extension, renewal, or refinance of credit, by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition . . .

The creditor has the burden of demonstrating that the debtor obtained credit purchases by fraudulent misrepresentation. *In re Vegh,* 14 B.R. 345, 347 (Bkrtcy.S.D. Fla.1981). Section 523(a)(2)(A) requires that for a debt to be held non-dischargeable the creditor must demonstrate that at the time the property was obtained:

1. the debtor obtained the property by means of representations which he knew were false or which were made with reckless disregard for their truthfulness;

2. the debtor intended to deceive the creditor; and,

3. the creditor actually and reasonably relied on the misrepresentation. *Matter of Schnore,* 13 B.R. 249 (Bkrtcy.W.D.Wisc.1981).

The three elements merit further examination.

(A) *Fraudulent or Reckless Misrepresentation:*

■ The majority of courts have held that a purchase of goods on credit by a debtor who does not intend to pay constitutes false representation. *See, e.g., In re Quintana,* 4 B.R. 508 (Bkrtcy.S.D.Fla.1980); *Collier on Bankruptcy,* Section 523.08, at 523–44–45 n. 19 (14th ed. 1979). The presentment of a credit card and signature on the receipt is a representation that the debtor has the intention and the ability to pay for the goods. *In re Banasiak,* 8 B.R. 171 (Bkrtcy.M.D.Fla.1981) Accordingly, if at the time of the credit purchase and presentment of the card the debtor either knew that he was unable to comply with the payment contract with the credit card issuer or when he clearly did not intend to pay for the goods, the use of the card constitutes a misrepresentation. *Matter of Schnore,* 13 B.R. 249, 254 (Bkrtcy.W.D.Wisc. 1981).

(B) *Intent to Deceive:*

■ The element of subjective intent to deceive the creditor into believing that the credit card holder did intend to pay for the goods, when in fact he did not, may be inferred from various circumstances, such as: consultation with an attorney about filing bankruptcy before making the purchases. *See In re Schneider,* 3 B.C.D., 175 (Bkrtcy.D.Nev.1977). The debtor's insolvency when the purchases were made, *see In re Kell,* 6 B.R. 695 (Bkrtcy.D.Colo.1980); the small cost of the purchases. *See In re D'Amico,* 1 B.R. 170 (Bkrtcy.W.D.N.Y.1979); or the debtor's exceeding the credit limit at the time of the purchases, *In re Kell,* 6 B.R. 695 (Bkrtcy.D.Colo.1980).

(C) *Reliance:*

■ The final element of non-dischargeability under Section 523(a)(2)(A) is the creditor's reasonable reliance on the debtor's misrepresentation to his detriment.

Where a creditor delivers goods on credit, the element of actual reliance is present. *Matter of Schnore, supra,* at 257. A credit card issuer's reliance is not considered unreasonable if it could not be expected to know the debtor had exceeded the credit limit. *In re Vegh,* 14 B.R. 345, 348 (Bkrtcy. S.D.Fla.1981) Even a bank's negligence in handling a debtor's application or in raising his credit limit is not a defense and does not negate the creditor's reasonable reliance. *Matter of Wright,* 8 B.R. 625 (Bkrtcy.S.D. Ohio, 1981); *Matter of Pitts,* 10 B.R. 557 (Bkrtcy.M.D.Fla., 1981); *In re Reinhart,* 1 B.C.D. 666 (E.D.Va., 1975).

■ Applying these principles to the present case, it is my conclusion that the debtor's purchases of merchandise by use of Mastercharge did not give rise to a non-dischargeable debt.

The debtor made regular monthly payments until the end of March 1981 which supports a conclusion that at least until April Turner intended to repay the Mastercharge bill. Moreover, a review of the charge receipt slips indicates that the Mastercharge balance gradually increased from January to June 1981. The statements and slips for the relevant period reveal no pattern of excessive or cumulative purchases from January to the date of the filing. Approximately two thirds in amount of the Mastercharge purchases were made prior to May 1981. Only two purchases were made in June after consultation with the bankruptcy attorney prior to the date of the filing. These facts support a finding that the debtor did not intend to deceive the creditor by using Mastercharge during May and June 1981. Accordingly, I find the Mastercharge debt dischargeable.

■ The circumstances of the debts arising from the Visa charges require a different result. In ten days, from May 30, 1981 to June 9, 1981, Turner charged $1,131.60. There was very little activity on the Visa account from January through May 1981. The facts do not give rise to an inference that the pre-June 1981 indebtedness was incurred with intent to defraud the creditor. On the day he consulted a bankruptcy attorney, however, a spending spree commenced, which indicated he did not intend to pay for the charges incurred after June 1. Moreover, all of the debtor's purchases in the ten day period were below the $50.00 limit which a merchant does not check. The charges were also made when Turner was over his credit limit, which he knew was limited to $1,000.00. Finally, Turner's schedules reveal that he was clearly insolvent in June 1981. I find these commonly accepted indicators of deceitful intent present in the debtor's purchases from May 30, 1981 until June 9, 1981.

I further find that plaintiff has sustained its burden of proving the other elements of non-dischargeability. It is undisputed that Turner presented his own credit card and signed for the purchases and cash advances. By presenting the card he represented his intent to pay. Also, I find the plaintiff actually relied on the representation that payment would be made because the goods and cash were in fact delivered. This reliance was not unreasonable because his charges were under $50.00 and merchants did not advise the bank of the charges, so the bank would have no reason to know about the spending spree.

Accordingly, I find that the Visa debt to the plaintiff in the amount of $1,131.60 is non-dischargeable.

■ As an alternative ground for non-dischargeability in its complaint, plaintiff alleges that the debtor, by signing the charge slips at the time of the purchases, made a materially false statement concerning his financial condition, with intent to deceive the creditor.

11 U.S.C. Section 523(a)(2)(B) excepts from discharge debts for obtaining property on credit by use of a statement in writing that is materially false, respecting the debtor's financial condition; on which the creditor reasonably relied; and published with intent to deceive. To satisfy the false financial statement exception, there must exist a written statement which represents the debtor's financial condition containing some type of statement valuing assets and/or liabilities. *See 3 Collier on Bankruptcy,* Par. 523.09(3) at 523–57–58 (15th ed. 1979). Documents such as building contracts or permit applications between debtor and creditor do not constitute a written statement representing financial condition as required by Section 523(a)(2)(B). *In re Baiota,* 12 B.R. 813 (Bkrtcy.N.Y.1981).

In the present case, the slips signed by the debtor were not statements concerning the value of his assets or liabilities, but rather, were merely receipts evidencing the charge purchases. Accordingly the plaintiff's second cause of action is without merit, and judgment shall enter for the defendant on this portion of plaintiff's complaint.