In re William E. PARKER, Debtor.

SPRINGFIELD INSTITUTION FOR SAVINGS, Plaintiff,

v.

William E. PARKER, Defendant.

Bankruptcy No. 4–80–00601–G.
Adv. No. 4–82–0236.

United States Bankruptcy Court,
D. Massachusetts.

April 8, 1986.

Kamberg, Berman, Gold & West, P.C., Springfield, Mass.

Daniel O'Malley, Springfield, Mass.

Office of the U.S. Trustee, Boston, Mass.

### MEMORANDUM RE: COMPLAINT TO DETERMINE DISCHARGEABILITY OF A DEBT

JAMES A. GOODMAN, Bankruptcy Judge.

This matter is before the Court on a Complaint to Determine the Dischargeability of a Debt, filed on July 8, 1981. An answer was filed on July 30, 1981. A trial was held before Judge Glennon on October 15, 1982. Judge Glennon retired before having an opportunity to decide the matter. The parties have agreed that the matter could be decided based on the pleadings, the briefs and exhibits submitted by the parties, and the stenographic record.

### FACTS

William Parker (the "Debtor" or "Parker") applied for, and received, a Visa charge account from the Springfield Institution for Savings ("SIS" or the "Bank") in 1976. Parker received a $500 line of credit

which was raised to $1000 in 1978, at Parker's written request.

Between 1976 and June, 1980, Parker's account was considered by SIS to be a satisfactory account. Beginning in June 1980, Parker's account began to show signs of greatly increased activity, which is evidenced by a review of the account's monthly statements between January and August of 1980.

Between January of 1980 and May 1980, Parker charged between one and six items to his account each month and made regular monthly payments. The account balance ranged between $1032.70 and $1073.93. Because the balance exceeded $1000 for each of these five months, the statements for these months indicated a credit availability of "none".

The June 1980 statement, which had a closing date of June 20, 1980, shows that fifteen charges were made during the period of that statement and no payments were made on a minimum amount due of $129. The account balance was $1032.70.

The July statement, with a closing date of July 23, 1980, shows an account balance of $3801.96. Parker made sixty-nine charges during that period and no payment on a minimum amount due of $320.

The August 1980 statement, with a closing date of August 22, 1980, shows an account balance of $4900.02. During that period, Parker made thirty-three charges and no payments on a minimum amount due of $565.03. The June, July and August, 1980 statements all showed a credit availability of "none".

In the middle of June 1980, Parker's account was brought to the attention of Wolfgang Adametz ("Adametz"), the collection manager of SIS, because his balance was more than ten percent over his credit limit of $1000. On June 26, 1980, SIS sent a letter to Parker asking him to reduce his account balance to the established credit limit. Parker claimed that he never re-

ceived this letter. He continued to use his card and made no payments to his account.

On July 15, 1980, SIS sent a letter to Parker notifying him of the revocation of his credit card privileges and instructing him to return the card. Parker acknowledged at the trial that he had received this letter, but continued to use the card. On July 18, 1980, Adametz spoke to Parker's attorney and told him that Parker was still using the Visa card, despite the July 15th letter. SIS received the card back on July 30, 1980, in an envelope postmarked July 29, 1980. No further charges were made after July 29, 1980.

Between June 1 and July 29, 1980, Parker made 113 charges with his Visa card. All but one of the charges made during this period were for amounts less that $50. Between the May statement, dated May 20, 1980 and the August statement, Parker's account balance increased from $1069.96 to $4900.02. Parker filed a Chapter 13 petition on September 15, 1980.[1]

Parker testified that during this period of time, he was under the impression that his union was negotiating a lump sum retroactive pay raise and that he expected to receive approximately $2000. Parker testified that he called someone at the Bank, seeking to have his credit limit raised to $2000. He did not remember when he called or who he spoke to. He also admitted that he never made any written application to raise his credit limit and that he never received any indication from the Bank that his credit limit had been raised. Parker admitted that he had contacted his attorney in May or June of 1980, in order to discuss the possibility of his filing bankruptcy.

## CONCLUSIONS OF LAW

The Bank seeks to have the charges made by the Debtor to his account between June 1, 1980 and July 29, 1980, a total of $3797.61, declared non-dischargeable pur-

---

1. The case was converted to a Chapter 7 proceeding on February 20, 1981 on the debtor's own motion.

suant to 11 U.S.C. § 523(a)(2)(A).[2] The burden of demonstrating that a debtor obtained credit through fraudulent misrepresentation is on the creditor. *In re Turner,* 23 B.R. 681 (Bankr.D.Mass.1982). In order for a debt to be declared non-dischargeable under 11 U.S.C. § 523(a)(2)(A), the creditor must prove three elements, each of which will be discussed separately below.

■ First, the creditor must show that the debtor obtained property by means of representations which he knew were false or which were made with a reckless disregard for their truthfulness. *In re Schmidt,* 36 B.R. 459, 460 (E.D.Mo.1983); *In re Turner,* 23 B.R. at 684, *citing Matter of Schnore,* 13 B.R. 249 (Bankr.W.D.Wis. 1981). The presentment of a credit card and the signature of the debtor on the receipt, in order to obtain goods, is a representation that the debtor intends, and has the ability, to pay for those goods. If at the time of the purchase the debtor either knew he would be unable to pay or clearly did not intend to pay for the goods, his use of the card constitutes a misrepresentation. *In re Turner,* 23 B.R. at 684 (cites omitted).

■ The second element which must be proven by the creditor is an intent by the debtor to deceive the creditor through these misrepresentations. This intent may be inferred from the circumstances of the case. Among the factors which may be considered by the Court in determining whether the intent to deceive is present are:

1. the length of time between the dates of the purchases and the filing of the bankruptcy petition;

2. whether the debtor consulted with an attorney about filing bankruptcy prior to making the charges;

3. the number of charges made;

4. the small amounts of the individual charges; and

5. whether the debtor had exceeded the credit limit at the time the charges were made.

*In re Schmidt,* 36 B.R. at 460; *In re Turner,* 23 B.R. at 684.

The third and final element which must be proven is that the creditor reasonably relied, to his detriment, on the debtor's misrepresentations. "Where a creditor delivers goods on credit, the element of actual reliance is present". *In re Turner,* 23 B.R. at 684, *citing Matter of Schnore,* 13 B.R. at 257.

After applying these criteria to the case *sub judice,* the Court finds that the $3797.61 in charges made by the Debtor between June 1, 1980 and July 29, 1980 are non-dischargeable, pursuant to 11 U.S.C. § 523(a)(2)(A).

The debtor did not dispute the fact that he had used his card on 113 occasions between these two dates, in order to obtain merchandise and services. By using the card, he represented that he had the ability and the intention to pay for these goods. It is clear to the Court, from the circumstances of this case, that this representation was false and that the Debtor knew that it was false.

It is also clear that the Debtor intended to deceive the Bank at the time he made these representations. The purchases were made between June 1 and July 29, 1980. The bankruptcy petition was filed approximately six weeks later, on September 15, 1980. Parker admitted that he had contacted his attorney in May or June of 1980, roughly at the time he began this "spree". Further, although Parker averaged between one and six charges per month between January and May of 1980; between June 1 and July 29, 1980 he made 113

---

2. Section 523(a)(2)(A) states:
(a) A discharge under section 727, 1141 or 1328(b) of this title does not discharge an individual debtor from any debt—
(2) for money, property, services or an extension renewal, or refinancing of credit, to the extent obtained by—
(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

charges. All but one of these charges was for an amount less than $50. This is significant because it is a standard practice for merchants to inquire about the credit status of the card holder only in cases where the purchases are larger than $50. The Court notes that on one occasion during these periods and on several occasions in the prior five months, he made charges in excess of $50 and during this period there were several instances where he made more than one charge at the same establishment on the same day, in order to avoid making any charges over $50. Finally, at all relevant times, Parker's account balance exceeded his credit limit. It is clear from his testimony, and from the exhibits, that he was aware of this fact at the time he made all of the charges in June and July of 1980.

■ The Court also finds that the Bank reasonably relied, to its detriment, on Parker's misrepresentations. Parker did not deny receiving any of the goods listed on his account statements as being charged during this period. Because all but one of the charges were under $50, the merchants did not notify the Bank at the time they were made. As the Bank became aware of the extent and amount of Parker's charge account activity, they took reasonable steps to curtail it, including a demand for return of the card.

For the foregoing reasons, $3,797.61 of the debt owed by Parker to the Bank will be declared non-dischargeable.