In re Jerry T. POZUCEK and Michelle D. Pozucek, Debtor.

MERCANTILE TRUST COMPANY NATIONAL ASSOCIATION, a national banking association, Plaintiff,

v.

Jerry T. POZUCEK and Michelle D. Pozucek, Defendant.

AMERICAN EXPRESS TRAVEL RELATED SERVICES COMPANY, INC., Plaintiff,

v.

Jerry T. POZUCEK, Defendant.

Bankruptcy Nos. 85 B 637, 85 A 338 and 85 A 428.

United States Bankruptcy Court, N.D. Illinois, E.D.

May 1, 1987.

David P. Lloyd, Teller, Levit & Silvertrust, Chicago, Ill., for plaintiff.

Paul Kerstein, Conlon & Kerstein, Chicago, Ill., Donald A. Glazier, Paul M. Heller & Assoc., Chicago, Ill., for defendant.

MEMORANDUM OPINION
AND ORDER

FREDERICK J. HERTZ, Bankruptcy Judge.

These matters come to be heard upon the adversary complaints filed by Mercantile Trust Company and American Express Travel Related Services ("AMEX") against

the debtor, Jerry T. Pozucek. Included as a named defendant in Mercantile Trust's complaint is Pozucek's wife, Michelle. These cases were consolidated for trial by stipulation of the parties. Both AMEX and Mercantile Trust contend Pozucek fraudulently incurred charges on credit cards issued by their companies. They thus seek to exempt their claims from discharge, pursuant to § 523(a)(2)(A) of the Bankruptcy Code. For the reasons set forth below, this Court grants judgment in favor of AMEX and Mercantile Trust with respect to defendant Jerry Pozucek.

§ 523(a) provides in pertinent part:

A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title * * * does not discharge an individual debtor from any debt—

*   *   *   *   *   *

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

11 U.S.C. § 523(a)(2)(A).

██ It is well settled that the purchase of goods on credit without the ability or intention of paying the credit card bill constitutes fraud or false representation. *American Bank and Trust Co. v. Lipsey (In re Lipsey)*, 41 B.R. 255, 257 (Bankr.E.D.Pa.1984); and 3 *Collier on Bankruptcy*, ¶ 523.08 (15th ed. 1986). In an adversary proceeding, the plaintiff must prove by clear and convincing evidence that the debtor engaged in said fraudulent conduct. *Harris "Charge it" Systems v. Deloian (In re Deloian)*, 60 B.R. 161, 164 (Bankr.N.D.Ill.1986).

Here, the record reveals that Pozucek worked as a Chicago police officer since the mid–1970's. In November of 1986, he sought, but did not obtain a disability discharge. He then resigned from the force and moved to Las Vegas, Nevada.

Pozucek testified he has two children, both of whom were minors under his care and custody in 1984. In 1984, Pozucek earned approximately $2100 a month. His wife earned $1800 monthly. Their monthly family expenses were slightly over $3000. Pozucek moonlighted as a security guard to supplement his income. Additionally, since 1975, he received nearly $14,000 from his mother. Although Pozucek had a savings account (this account was used primarily to pay his mortgage), he stated he kept most of his savings in a bedroom safe. He testified that keeping such a safe was customary in his family. By 1984, he claimed he had accumulated $38,000.

Pozucek obtained a Visa card from Mercantile Trust in November of 1983. He had two American Express credit cards. He obtained an American Express gold card from AMEX in March of 1984. A green card had been previously issued to him. Pozucek testified that, from February to November of 1984, his monthly Visa card balance was under $1000, and, for the most part, within his credit limit. He paid at least the minimum monthly payment required. His monthly charges on his American Express gold card normally ranged between $1500 to $2500 per month, which he paid in full with cash up until November of 1984.

Pozucek further testified he enjoyed gambling. He frequented the race track and Las Vegas casinos. Until late November and early December of 1984, his gambling activity did not affect his lifestyle.

In November and December of 1984, Pozucek made numerous credit card purchases, resulting in a Visa card balance of approximately $6000, an American Express gold card balance of $14,000 and a green card balance of $9000. Pozucek stated the credit card purchases were Christmas gifts for his family and wedding gifts for his daughter. He further explained that his numerous Visa purchases were designed, in part, to take advantage of a Visa bonus program which apparently encouraged frequent use. He planned to pay for these charges with the $38,000 in his safe. However, he subsequently lost all that money at the race track. He was therefore forced to file for bankruptcy on January 16, 1985.

Courts have used the following four factors for guidance in determining whether a debtor fraudulently made credit card purchases: The number and amount of the charges, and whether these charges exceeded the debtor's credit limit; the debtor's financial condition at the time the charges were made; the length of time between the purchase and the bankruptcy petition; and whether an attorney had been consulted concerning the filing of bankruptcy before the charges were made. *Strawbridge & Clothier v. Ciavarelli (In re Ciavarelli)*, 16 B.R. 369, 370 (Bankr.E. D.Pa.1982).

▪ In applying these factors to the instant case, this Court concludes Pozucek fraudulently incurred credit card debts without intending to pay for the purchases. First, Pozucek's pattern of credit card purchases prior to November of 1984 contrasted sharply with his subsequent purchases during November and December of that year. Prior to November, his Visa card purchases ranged from one to four items per month, with a total monthly bill of no more than a few hundred dollars. While he occasionally exceeded his credit limit, it was only by a small amount.

However, in November of 1984, Pozucek's purchasing activity changed drastically. From November 17th through November 19th, he made forty-four purchases, all under $50. His November statement indicates his balance was $2792.63, far in excess of his $900 credit limit. Pozucek's December statement reveals a continued pattern of credit card abuse. It contains 104 purchases, all under $50, leaving an outstanding balance of $6288.32.

(Pozucek's partial explanation, that the Visa bonus program induced him to make many small purchases instead of a few large charges, was not credible. The better explanation for this conduct was that Pozucek sought to avoid having these charges called in to Mercantile Trust. Evidence in the record reveals that only purchases over $75 were immediately reported.)

This purchase pattern was also reflected in Pozucek's American Express gold card charges. Prior to November of 1984, his charges had been between $1500 to $2500. Well within the credit limit. Charges in November totalled nearly $15,000. He incurred an additional $9000 in debt on his green card. Both balances exceeded his credit limit.

Second, not only were Pozucek's debts in November and December abnormally high, they were not justified by any increase in income. In fact, Pozucek testified he lost money gambling in Las Vegas in October and November of 1984. While the extent of his losses were unclear, Pozucek obviously did not improve his financial situation.

Pozucek's contention that he planned to pay his debts with the money stored in his safe was simply not believable. There is no evidence, other than his self-serving testimony, that this money ever existed. Pozucek had a checking and savings account. He was obviously familiar with the services offered by financial institutions, such as safety, as well as interest payments on savings deposits.

Assuming arguendo Pozucek did have this undocumented money, it is doubtful he would have applied it to his November and December debts. Examination of his Visa account reveals an outstanding balance of nearly $500 since March of 1984. Pozucek chose to pay the high finance charge rather than reduce his indebtedness. It is noted that he paid his AMEX charges with cash.

Third, these purchases were made within three months of the filing of the bankruptcy petition. It is apparent the charges were made in contemplation of bankruptcy protection.

Lastly, Pozucek testified he first consulted an attorney concerning the filing of this bankruptcy petition in January of 1985. However, the purpose behind this inquiry is whether a debtor was contemplating bankruptcy, and the protection afforded by bankruptcy laws, prior to incurring additional debt. This court takes judicial notice of the fact that Pozucek filed a prior bankruptcy petition in 1972. *In re Pozucek*, 72 B 2165 (N.D.Ill.1972). This fact indicates

Pozucek was familiar with bankruptcy law and the benefits of bankruptcy protection prior to incurring the debts in issue.

Accordingly, this Court finds that Jerry Pozucek did fraudulently incur debt by purchasing goods with his Visa and American Express cards without intending to pay the credit card bills. Since no evidence was offered to implicate Michelle Pozucek in this activity, judgment is granted in favor of Michelle with respect to Merchantile Trust's complaint.

THEREFORE, IT IS HEREBY ORDERED that judgment is granted in favor of Mercantile Trust against Jerry Pozucek in the amount of $5442.28. Pursuant to 11 U.S.C. § 523(a)(2)(A), this judgment is not dischargeable.

IT IS FURTHER ORDERED that judgment is granted in favor of AMEX against Jerry Pozucek for $14,975.52. Pursuant to 11 U.S.C. § 523(a)(2)(A), this judgment is not dischargeable. The attorneys for Mercantile Trust and AMEX shall draft an order in accordance with this opinion within five (5) days.

IT IS SO ORDERED.