In re Terry Ivan CACHO, Debtor.

**CHEVY CHASE FEDERAL SAVINGS BANK, Plaintiff,**

v.

**Terry Ivan CACHO, Defendant.**

Bankruptcy No. 89–04459.
Adv. No. 89–9103.

United States Bankruptcy Court,
N.D. Florida,
Pensacola Division.

Oct. 15, 1991.

James Magaha, Pensacola, Fla., for plaintiff.

Steve Bowden, Tallahassee, Fla., for defendant.

M. Alan Rhodey, Ft. Walton Beach, Fla., Trustee.

### MEMORANDUM OF OPINION

LEWIS M. KILLIAN, Jr., Bankruptcy Judge.

THIS CASE is before the Court on the complaint of Chevy Chase Federal Savings Bank (Chevy Chase) the issuer of a credit card to the defendant, Terry Cacho, seeking to except its claim from discharge pursuant to 11 U.S.C. § 523(a)(2)(A). Both parties have filed motions for summary judgment and the matter came on for hearing on September 20, 1991.

At the outset, we must note that summary judgment pursuant to Bankruptcy Rule 7056, which incorporates Rule 56 F.R.Civ.P., is appropriate only when "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In the instant case, there is a genuine issue as to a material fact, that being whether or not the defendant acted with fraudulent intent as alleged in the complaint. This is the key issue for determination by the court and is, of course, hotly disputed. Therefore, neither side is entitled to summary judgment. However, the motions are supported by affidavits and the deposition testimony of the defendant, and both sides have indicated that the court has before it all of the facts necessary to a final determination of the issues. Accordingly, I will rule on the merits of the case based on the affidavits and deposition testimony.

The following facts are pertinent to this case. The defendant and debtor Terry Ivan Cacho filed a petition for relief under Chapter 7 of the Bankruptcy Code on June 12, 1989. The case was a no asset case and accordingly no dividend was paid to unsecured creditors. Plaintiff, Chevy Chase is the holder of an unsecured claim in the amount of $3,669.78 for credit card charges of which it seeks to have $2,768.42 excepted from discharge. In its complaint, Chevy Chase alleges that $768.42 of the charges were for consumer luxury items and the remaining $2,000.00 was for a cash advance. Chevy Chase alleges that at the time of the charges, the defendant did not have the ability to or the reasonable intent to repay them and thus he lacked intent to make payment.

The evidence presented by the debtor reflects the dates and sums of the charges contained in Chevy Chase's complaint:

March 14, 1989—stereo speakers were purchased for $345.50.

March 15, 1989—flowers purchased in the amount of $20.46 for a lady friend of defendant.

March 17, 1989—flowers purchased in the amount of $29.00.

March 18, 1989—defendant and date ate at a restaurant known as Taco House for $18.83.

March 21, 1989—defendant purchased eye glass frames for $188.95.

March 29, 1989—defendant and date ate at Cuco's Restaurant for $20.13.

March 31, 1989—defendant purchased lawn pump parts for $81.95.

April 1, 1989—defendant took out a cash advance in the amount of $2,000.00.

The $2,000.00 cash advance was deposited into the defendant's checking account located at Sun Bank to cover an overdraft in the amount of $77.93 and the funds were thereafter used to make payments to numerous creditors. Four hundred dollars was spent on May 26, 1989, to pay James Magaha, the defendant's bankruptcy lawyer.

The last payment to Chevy Chase on account of the credit card was in the amount of $66.00 paid on April 9, 1989.

On April 5, 1989, the debtor consulted with James Magaha, the attorney who represents him in this case, regarding the possibility of filing bankruptcy. At that time, Mr. Magaha advised the defendant that he was basically insolvent and that he should go ahead and file bankruptcy, however, rather than filing bankruptcy the defendant decided that he wanted to attempt to pay his creditors.

At the time that the charges were made on the credit card, defendant was employed at Preferred Business Machines earning takehome pay of approximately $1,442.00 per month. His financial problems began in January of 1989, after he and his fiancee, with whom he had built a house and who had contributed towards the monthly payments, separated. He began experiencing difficulties in paying his bills but he believed that in March he would be getting an extra commission from his employment and that he would be able to work things out. Except for the $2,000.00 cash advance which was taken out fourteen (14) days after he consulted with Mr. Magaha, the defendant made no purchases with his credit card between March 31, 1989, and June 12, the date of his bankruptcy peti-

tion. The credit limit on the defendant's credit card was $4,500.00.

In this circuit, the Court of Appeals has considered the issue of the misuse of credit cards by debtors in *First National Bank of Mobile v. Roddenberry*, 701 F.2d 927 (11th Cir.1983). There, the court, interpreting § 17(a)(2) of the Bankruptcy Act, held that only after a bank's clear revocation of a credit card has been communicated to the card holder will use of the card result in liabilities obtained by "false pretenses or false representations", thus excepting the debt from discharge in bankruptcy. In so holding, the court was dealing with the situation based primarily on the debtor's exceeding the credit limits prior to filing bankruptcy. In so ruling, stated that:

> Banks are willing to risk non-payment of debts because that risk is factored into the finance charges. Because the risk is voluntary and calculated, § 17(a)(2) should not be construed to afford additional protection for those who unwisely permit or encourage debtors to exceed their credit limit. 701 F.2d at 932.

■ Since *Roddenberry*, many courts, including courts in this circuit have distinguished *Roddenberry* holding that while exceeding credit limits would not necessarily be a basis for an exception to discharge, the fraudulent use of a credit card does give rise to an exception. This standard is set forth in *In re Dorsey*, 120 B.R. 592 (Bankr.M.D.FL 1990) in which Judge Paskay succinctly put it as follows:

> Thus if it is shown that at the time the debtor incurred the charges he or she knew that they would be unable to live up to the obligation and pay the charges, or if it appears that they had no intention to pay the charges when the charges were incurred, that would clearly be an actual fraud thus rendering the debt incurred by using the credit card non-dischargeable under § 523(a)(2)(a). 120 B.R. at 596.

Thus the issue to be determined is the actual intent or state of mind of the defendant at the time the charges were made.

■ The Ninth Circuit Bankruptcy Appellate Panel in *In re Dougherty*, 84 B.R. 653 (9th B.A.P.1988) set forth a non-exclusive list of factors for trial courts to consider in determining whether credit card debt was incurred through actual fraud. This list is as follows:

1) The length of time between the charges made and the filing of bankruptcy;
2) Whether or not an attorney has been consulted concerning the filing of bankruptcy before the charges were made;
3) The number of charges made;
4) The amount of the charges;
5) The financial condition of the debtor at the time the charges are made;
6) Whether the charges were above the credit limit of the account;
7) Whether the debtor made multiple charges on the same day;
8) Whether or not the debtor was employed;
9) The debtor's prospects for employment;
10) Financial sophistication of the debtor;
11) Whether there was a sudden change in the debtor's habits; and
12) Whether the purchases were made for luxuries or necessities.

*Id.* at 657.

■ weighing the above factors, it appears that the defendant in this case did not incur the charges for which Chevy Chase seeks an exception to discharge with fraudulent intent. With regard to the length of time between the charges and the filing of the bankruptcy, well over a month and a half elapsed between the $2,000 cash advance and the bankruptcy and almost 2½ months lapsed between the time of the last purchase and the bankruptcy. The total number of charges, including the cash advance of which Chevy Chase complains, was eight transactions incurred on separate dates in the amounts previously set forth.

This record can be contrasted with those in other credit card cases in which the claims have found to be non-dischargeable.

In *In re Pozucek*, 73 B.R. 110 (Bankr. N.D.Ill.1987), the debtor made 148 purchases, all under $50.00 on one credit card within three (3) months of filing bankruptcy. In *In re Parker*, 59 B.R. 721 (Bankr. D.Mass.1976) the debtor between June 1 and July 29 made 113 charges on his Visa card, all but one being for amounts less than $50.00. In that case, the bankruptcy was filed on September 15. In *In re Dorsey*, the debtor used her two American Express cards for 72 separate transactions totalling in excess of $24,000 over a 2½ month period during which time she filed her Chapter 7 bankruptcy petition. The making of numerous purchases under $50.00 has been found to be significant by courts facing that pattern since it is a standard practice for merchants to inquire about the credit status of cardholders only when the purchase is larger than $50. *In re Parker*, 59 B.R. at 724. In comparing this debtor's spending pattern with those in which courts have found the existence of fraudulent intent, we cannot conclude just from that pattern that this defendant was intentionally incurring charges with no intention of repaying them.

While the financial condition of the debtor at the time of the charges was admittedly extremely tenuous, the debtor was employed and there was no indication that his employment status would change for the worse. There has been no evidence presented as to any sudden change in the debtor's buying habits and while the items purchased may not have been absolute necessities of life for the debtor, we cannot say that relatively inexpensive meals out with a date and flowers on two occasions for a lady friend should be considered as luxuries.

The fact that the defendant did consult with a bankruptcy attorney prior to taking out the $2,000 cash advance may suggest that he took out the advance in contemplation of filing bankruptcy and with no intent to pay it. However, we find that the length of time between the cash advance and the bankruptcy, and the fact that payments were made on numerous debts after the cash advance was taken out indicate that the debtor was still attempting to pay his debts and had not decided to file bankruptcy at the time of the cash advance. Furthermore, the defendant's testimony establishes that while he had been advised to file bankruptcy, he did not want to do so and still wanted to pay his debts and he attempted to do so until May 26, 1989 when he decided to file bankruptcy.

The defendant's circumstances clearly reflect that he lacks financial sophistication. His testimony shows that he had not balanced his checkbook in five (5) years thus resulting in the overdraft which he cured with part of the $2,000 cash advance.

This case is illustrative of the concern expressed by the Ninth Circuit Bankruptcy Appellate Panel in *In re Karelin*, 109 B.R. 943, 947 (9th Cir.B.A.P.1990) when it said:

> Care must be taken to stop short of a rule that would make every desperate financially debtor a guarantor of his ability to repay, on pain of non-dischargeability. Such a rule would unduly expand the "actual fraud" discharge exception by attenuating the intent requirement. A substantial number of bankruptcy debtors incur debts with hopes of repaying them that could be considered unrealistic in hindsight. This by itself does not constitute fraudulent conduct warranting non-discharge.

Thus, in a day when credit card companies continuously bombard consumers with "pre-approved" credit cards and when a typical consumer debtor comes before this court with multiple Visa cards, Mastercards, and American Express cards, these companies can only expect to have their claims excepted from discharge when they can demonstrate that the debtor had the requisite fraudulent intent at the time the charges were incurred. The plaintiff in this case has fallen woefully short of demonstrating the existence of actual fraud and accordingly the claim will be discharged.

A separate final judgment will be entered in consistent with these findings and conclusions.

DONE AND ORDERED.