In re Alexander W. **LOVE** III and Roxanna L. **Love,** Debtors.

**J.C. PENNEY COMPANY, INC., Plaintiff,**

v.

Alexander W. **LOVE** III and Roxanna L. **Love,** Defendants.

Bankruptcy No. 83–02179–2.
Adv. No. 83–1185–2.

United States Bankruptcy Court, W.D. Missouri.

March 4, 1985.

William B. Bates, Kansas City, Mo., for plaintiff.

Stephen B. Sutton, Gage & Tucker, Kansas City, Mo., for defendants/debtors.

MEMORANDUM OPINION
AND ORDER

JOEL PELOFSKY, Bankruptcy Judge.

Alexander and Roxanna Love filed a joint Chapter 7 petition in bankruptcy on

August 19, 1983. Thereafter J.C. Penney Co., Inc., plaintiff herein, filed a complaint alleging that the $4,705.67 which debtors owed on their credit account was nondischargeable. Debtors answered by specific denial. The matter was heard and taken under advisement, pending the receipt of briefs which have been filed.

The evidence shows that Mr. Love signed a credit application in 1971 which resulted in an account being established in his name. The terms of the credit agreement between the parties were set out in the credit application signed by Mr. Love and accepted by plaintiff. Mrs. Love did not sign the credit application but is listed as an "Authorized Buyer" in the application section of the document.

Debtors used the account without incident from 1971 until July of 1983. A history ledger of the account indicates substantial activity, a high balance of $939.76, regular payments and that debtors paid off the outstanding balance due on the account in March of 1983. The ledger reflects no further activity until June of 1983. On June 27 and 28, 1983, Mrs. Love made clothing purchases of $573.62 and furniture purchases of $4,132.15 on the account. The subsequent July payment on the account was not paid. On August 19, 1983, seven weeks after the merchandise was purchased, debtors filed their bankruptcy petition and scheduled the debt to plaintiff as an unsecured amount.

Plaintiff alleges that the debt is nondischargeable under § 523(a)(2)(A) of the Code. That section provides that an individual is not discharged from any debt—

"(2) for obtaining ... an extension ... of credit, by—

(A) false pretenses, a false representation, or actual fraud..."

■ To find a debt nondischargeable under this subsection it must be shown that:

(1) the debtor knowingly made a false representation;

(2) that it was made with an intent to defraud;

(3) that the creditor relied upon the false information.

*In re Schmidt,* 36 B.R. 459, 460 (ED Mo. 1983). Plaintiff has the burden of proving each element by clear and convincing evidence. Rule 4005, Rules of Bankruptcy Procedure; *In re Rauch,* 18 B.R. 97 (Bkrtcy. WD Mo.1982). Exceptions to discharge must be construed narrowly. *Matter of Klusman,* 29 B.R. 865 (Bkrtcy. SD Ohio 1983).

The evidence shows that Mr. Love was a successful insurance salesman until he encountered health problems. He underwent open heart surgery in November of 1982 and was able to return to work. In June of 1983 he suffered complications from the surgery and was hospitalized. He was in the hospital when the purchases were made. There is no evidence that his wife discussed the purchases with him before she made them. He would pay the bills. The testimony also shows that she had no access to the checkbook and, while she was aware of her husband's income in June of 1983, she had no notion of the family's overall financial condition. She testified that she made these various purchases to relieve the depression brought on by her husband's condition. There is no evidence that she told her husband of the purchases. When he came home from the hospital he could not climb stairs and there is no evidence that he was aware of the clothes or new furniture.

■ The question of dischargeability is a matter of federal law. *Brown v. Felsen,* 442 U.S. 127, 135, 136, 99 S.Ct. 2205, 2211, 2212, 60 L.Ed.2d 767 (1979). The fraud must be actual and not imputed as a matter of law. *In re Taylor,* 514 F.2d 1370 (9th Cir.1975); *In re Hansen,* 17 B.R. 342 (Bkrtcy. WD Mo.1982). This is true even though the imputation would be between husband and wife. *In re Bursh,* 14 B.R. 702 (Bkrtcy.Ariz.1981); *Matter of Brashears,* 12 B.R. 136 (Bkrtcy. SD Miss.1981).

Plaintiff contends that Mrs. Love acted as her husband's agent as to the purchases.

The issue of agency is not ruled by Missouri law.

"... neither husband nor wife has the power to act as the other's agent merely by virtue of the marital relation ...". *Vaughn v. Great American Insurance Company,* 390 S.W.2d 622, 627 (Mo.App. 1965).

"The agency of a husband for his wife may be shown by direct evidence or by facts and circumstances which will authorize a reasonable and logical inference that he was empowered to act for her or that she ratified his unauthorized acts ... A wife by her actions and conduct may be estopped to deny her husband's authority to act as her agent for her in her behalf". *Ethridge v. Perryman,* 363 S.W.2d 696, 701–02 (Mo.1963).

"... when a husband assumes to act for his wife and when his action naturally tends to accomplish her known wishes it needs but little evidence to warrant an inference that the agency was authorized by her. Slight evidence of the agency of the husband for the wife is sufficient to charge her where she receives, retains and enjoys the benefit of the contract". *Bowen v. Lloyd,* 589 S.W.2d 312, 317 (Mo.App.1979) citing, with approval 41 CJS Husband and Wife § 70, p. 548.

"No actual participation in the fraud nor in the corporate management was shown and in the absence of an agency relationship recovery does not lie against the wives". *Link v. Cox,* 529 S.W.2d 189, 191 (Mo.App.1975).

■ The evidence shows that the account was opened in the husband's name alone but that his wife was an authorized buyer. She was his agent, therefore, for purposes of making purchases on the account. The account history shows that she made charges and he made payments. As a matter of law, outside bankruptcy then, he is liable for her purchases at least up to previously established credit limits. Debtors do not dispute that conclusion. The question is rather whether her conduct was fraudulent and may be imputed to him in the context of nondischargeability.

■ The evidence shows that Mrs. Love did not discuss her purchases from plaintiff with her husband. The evidence does not show that he was aware of them prior to his filing or that he ratified either the purchases or the increase in credit. As a matter of bankruptcy law, a debtor must ratify by positive act any fraud or misrepresentation. Cf. *In re Hansen,* supra. And compare *In re Bursh,* supra, where the court held that agency imputed by acceptance of benefit was not the positive conduct upon which a determination of nondischargeability could be based. Even the Missouri courts recognize, in *Ethridge,* supra, and *Link,* supra, that the husband and wife relationship is not conclusive on the question of participation in a fraud.

Here the Court finds that Mrs. Love's conduct cannot be imputed to her husband for the purposes of determining that his obligation to plaintiff is nondischargeable. He committed no act of positive fraud or misrepresentation and there is no evidence or circumstances which persuade that she was authorized to exceed the credit limit or make misrepresentations on his behalf. The question remains as to whether her conduct causes her obligation to be nondischargeable.

■ A consumer using a credit card is held to imply a willingness and an ability to pay for the purchases. *Matter of Banasiak,* 8 B.R. 171 (Bkrtcy. MD Fla.1981). If such willingness and ability are lacking, the use of the card is fraudulent and the resulting debt nondischargeable. *In re Turner,* 23 B.R. 681 (Bkrtcy.Mass.1982); *In re Griffis,* 29 B.R. 110 (Bkrtcy.Vt.1983).

■ The evidence shows that Mrs. Love knew that, despite his illness, her husband had substantial income. She also knew that he paid the bills. She had little knowledge of the circumstances of their financial condition at the time these purchases were made but the evidence is clear that there was no anticipation of filing for relief then. Mrs. Love was not aware of her credit limit with plaintiff but when she exceeded it plaintiff assisted her, without consulting

her husband who owned the account, in obtaining a substantial increase in that limit. There was never any discussion among any of the parties as to payments or payment levels or whether the increase was acceptable to Mr. Love. In fact the Court is compelled to conclude that Mrs. Love assumed the account would be paid and that she had no intent to defraud because she had no specific knowledge as to her husband's ability to pay and gave no thought to the subject.

In the case styled *In re Schmidt*, supra, the court on appeal set out a number of criteria for determining whether there was fraudulent conduct in the use of a credit card. A number of criteria are also established in *Matter of Schnore*, 13 B.R. 249 (Bkrtcy. WD Wisc.1981) and in *In re Turner*, supra. Here the evidence shows, as viewed in the language of these opinions, that debtors had not consulted counsel about bankruptcy before making the purchases. The evidence also shows that debtors exceeded their credit limit with the assistance of plaintiff. The debtors were not insolvent when the purchases were made. Their crisis was a result of Mr. Love's surgery complications, the failure of insurance to pay the medical bills and, some two months after the purchases, notice of foreclosure on their home.

The evidence does not show that Mrs. Love had an intention not to pay. It shows that Mr. Love had neither knowledge of the purchases nor an intention one way or the other about paying. Plaintiff's bills came at a time when debtors' entire financial structure had collapsed and those bills went down with the rest. The Court finds that Mrs. Love had no intention to defraud and the debt is dischargeable as to her also. This is not to say, however, that a debtor may defend a complaint of nondischargeability by suggesting that he or she was totally ignorant of his or her financial situation. It is only in the narrow circumstances of this case where Mrs. Love was never involved in the family finances that such an argument is credible. Her involvement was so limited that, while Mr. Love was hospitalized in June and July, Mrs. Love was provided household funds by their banker. She could not even write a check. In addition, considering evidence of debtors' life style, the purchases do not represent reckless disregard of limits or financial capability such as would enable the Court to infer a fraudulent intent.

The Court notes that the account application contains a reservation of a security interest. It may be of interest to plaintiff to recover some of this property. The stay is lifted to permit plaintiff to repossess the furniture upon reasonable notice.