In re Shirley Y. VERDON, f/d/b/a Surf & Turf Inn, Debtor.

John PISANO, Plaintiff,

v.

Shirley Y. VERDON, f/d/b/a Surf & Turf Inn, Defendant.

Bankruptcy No. 87–00480.
Adv. No. 87–0056.

United States Bankruptcy Court,
N.D. New York.

Jan. 9, 1989.

Gustave J. DeTraglia, Jr., Utica, N.Y., for plaintiff.

Geoffrey A. Hampton, Utica, N.Y., for defendant.

## MEMORANDUM–DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

STEPHEN D. GERLING, Bankruptcy Judge.

This adversary proceeding was timely commenced by John Pisano ("Pisano") on June 26, 1987 in the bankruptcy case of Shirley Y. Verdon, f/d/b/a Surf & Turf Inn ("Debtor"). Pisano seeks to determine the nondischargeability of the sum of $215,-000.00 for compensatory and punitive damages and for relief from the automatic stay to pursue a related pre-petition state court action, pursuant to §§ 523(a)(2)(A), 523(a)(6) and 362(d) of the Bankruptcy Code, 11 U.S.C.A. §§ 101–1330 (West 1979 & Supp.1988) ("Code").

The matter was tried in Utica, New York on June 1, 1988 and the Court reserved decision following the submittal of memoranda by the parties addressing the relief sought in the complaint as well as the Debtor's request for costs under Code § 523(d).

## JURISDICTIONAL STATEMENT

Jurisdiction of this core proceeding arising under Title 11 is vested in the Court by virtue of 28 U.S.C.A. §§ 1334(b) and 157(a), (b)(1) and (b)(2)(I). The within memorandum-decision is rendered in accordance with Rules 7001(6), 7052 and 9017 of the Bankruptcy Rules ("Bankr.R.").

## FACTS

The Debtor is currently employed as a cook and had formerly operated the Surf and Turf Inn in Kirkland, New York from May through October 1986. On April 8, 1987, she filed a voluntary petition under Chapter 7, listing $242,531.44 in debt and $4,147.00 in assets. Schedule A–3 of her petition indicated a disputed and contingent unsecured claim held by Pisano in the amount of $230,000.00 based upon his lawsuit against the Debtor and her daughter and son-in-law, Jeanne and Richard Sherman.

Pisano claims that in 1986 the Debtor, Jeanne Sherman ("Jeanne") and Richard Sherman ("Sherman"), conspired to defraud him of his savings of $15,000.00 which he transferred to the Debtor with the understanding that it would be used on his behalf for the down payment of a home in Clinton, New York for himself and Jeanne "in anticipation of [their] marriage." *See* COMPLAINT TO DENY DISCHARGEABILITY AND FOR RELIEF FROM STAY para. 7 (rec'd & filed June 26, 1987). He further asserts that he made the transfer in reliance upon false representations made by Jeanne to him sometime in February 1986 individually and as the agent of the Debtor and Sherman with regard to finding a house at 24 Concord Boulevard in Clinton "ideal for the marital residence [he] planned to purchase" and of her own ability, based upon her real estate knowledge, conduct and conclude, with the Debtor's assistance, the transactions necessary to purchase it for his benefit. *See id.* at paras. 9, 10, 18. Pisano alleges that the Debtor used the $15,000.00 to purchase the Concord Boulevard house for the benefit of herself, her daughter and son-in-law. *See id.* at para. 14.

He also alleges that cause exists to lift the stay to allow the action he had initiated pre-petition in Oneida County Supreme Court against all three individuals to proceed since it is based upon the identical facts and involves the rights and liabilities

of third parties. *See id.* at paras. 24–25. Pisano states that this would not prejudice or delay the Debtor's Chapter 7 case. *See id.* at para. 24.

In her timely filed answer, the Debtor generally denies most of the allegations in the complaint and asserted two defenses: 1) that the proceeding was unenforceable under New York Law as it was "in the nature of the breach of an implied marriage contract" and 2) that the complaint failed to state a cause of action because "neither defendant purchased any real estate for the benefit of Jeanne Sherman or otherwise." *ANSWER* paras. 6–8 (rec'd & filed Aug. 21, 1987). She claims that the February 10, 1986 transfer to her checking account was made solely for her daughter's use and involved monies "entirely owned and belonging to Jeanne Sherman" and held by Pisano in name alone. *See id.* at para. 3.

The Debtor states that she received the money "without any condition, reservation or promise to the plaintiff whatsoever" and accepted it "without any responsibility for its use with the express consent and approval of the plaintiff, who was then and there present." *Id.* Her answer also contained a counterclaim for $2,500.00 of costs for what she characterized as Pisano's meritless suit. *See id.* at para. 9.

At the trial on June 1, 1988, the following facts were established:

1. On February 10, 1986, Pisano withdrew $15,000.00 from his bank account. *See* Plaintiff's Exhibit A (copy of withdrawal slip from The Savings Bank of Utica ("SBU") account # 10455718–8 bearing Pisano's signature).

2. On February 10, 1986, the Debtor deposited the same $15,000.00 into her bank account. *See* Plaintiff's Exhibit B (copy of deposit ticket from SBU account # 118–26–18–83).

3. The Debtor's checking account was used to disburse the $15,000.00. From February 11 to April 25, 1986, the Debtor signed twenty-two checks totalling $12,821.76 for items identified in the memo portion on the face of each check as furniture, appliances, security for house, heating oil, a 1981 automobile, insurance, clothing, wedding dress, and household furnishings. *See* Plaintiff's Exhibit D (copies of check # 's 93, 95, 96, 98–116, stamped "paid" on Debtor's SBU checking account # 0093787).

4. On May 19, 1986, the Debtor wrote a check to Sherman in the amount of $2,249.57, on which was written "washer and dryer, rugs, curtains, lamps, blankets and pillows" in the memo portion and "CLOSE ACCOUNT" on the top of the check. *See id.* (check # 118 from SBU account # 0093787).

5. Pisano received nothing in exchange for the $15,000.00 and the money was not returned to him.

6. At the time of the transfer, Pisano and Jeanne had been cohabiting for twelve years with three children they had raised on Pellettieri Avenue in Utica, New York and had never married.

7. On March 1, 1986, Jeanne was receiving public assistance and had moved herself and the children out of the house they had been living in with Pisano to a residence at 24 Concord Boulevard, Clinton, New York.

8. Jeanne and Sherman were married in August 1986 and currently live in the house on 24 Concord Boulevard.

### THE TRIAL TESTIMONY

Pisano testified that Jeanne had showed him the Clinton residence and that as a result he had transferred the $15,000.00 to the Debtor's account for its down payment and furniture. He stated that the $15,000.00 was not a loan to the Debtor and that he had tried unsuccessfully to get it back from the Debtor and Sherman. Pisano was not sure that he was the biological father of the three children he had raised with Jeanne in the twelve years they lived together.

Jeanne testified that she told Pisano at Christmas in 1985 that she planned to move and was looking for a place to live. She conceded that no money was discussed between her and her mother but insisted that

the $15,000.00 was for her benefit even though not put in her name. Jeanne stated that the money was kept in her mother's checking account until she "used it up" on, among other things, furniture for the house on Concord Boulevard. She recalled personally writing some of the checks on the Debtor's checking account, but that generally she would explain to her mother what she needed money for and the Debtor would write the check.

Jeanne testified that she did not discuss with the Debtor the purchase of real estate or the reason why Pisano gave her the $15,000.00. She further stated that Pisano gave her the money for her own use without any condition or promise because of the three children. Jeanne asserted that she had used all of her resources for the family over the past eleven years and that Pisano had continuously refused her marriage proposals made a number of times each year. She stated that "everyone knew" that Pisano gave her the $15,000.00 because she was leaving him.

The Debtor maintains that her daughter had asked to meet her at the bank on February 10, 1986 and when she arrived she transferred the funds from Pisano's account to her own, asking no questions. She testified that she had no knowledge of why the transaction occurred and did not discuss the $15,000.00 with Jeanne prior to or on February 10, 1986.

The Debtor further stated that she held the funds in her checking account for six to seven weeks and wrote checks on it for her daughter. While she knew that Jeanne was on public assistance on February 10, 1986, she did not know that her daughter was on the verge of breaking up with Pisano and planned to move out on March 1, 1986. The Debtor also attested that on the way out of the bank, Pisano said to her daughter, "See, Jeanne, I told you I was keeping this for you." She stated that she

had no use of the money and that all of it went to her daughter and grandchildren.

The Debtor's counsel asserts that this was "an affair of a broken heart" and that the Debtor had accepted the money the plaintiff gave to her for Jeanne without making any promises. At the close of the evidence, he moved for dismissal on the grounds that the proof was insufficient with regard to Code § 523(a)(2)(A) and that any loss or conversion under Code § 523(a)(6) required willfulness, which was absent here.

In response, counsel for the plaintiff argued that the Debtor's participation in the fraud could be inferred from the checks and the overall circumstances. Counsel charged that the Debtor had to have known on the date of the transfer that the $15,000.00 belonged to Pisano and that her daughter was planning to move out of the house she had been sharing with him twenty days later.

## ISSUE

■ Whether the Debtor was involved in a fraud or willful and malicious injury to Pisano's property with regard to the receipt and disbursement of $15,000.00 so as to render the sum in question and punitive damages flowing from said acts a nondischargeable debt in her Chapter 7 proceeding under Code § 523(a)(2)(A) and (a)(6)? [1]

## DISCUSSION

■ First, it should be noted that Code § 523 provides for the exception to the general discharge of individual debts arising from ten specific situations and its thrust is remedial, rather than punitive. *See F & M Marquette National Bank v. Richards (In re Richards)*, 81 B.R. 527, 530–31 (Bankr.D.Minn.1987). The statute creates a cause of action for nondischargeability, not damages, and, indeed, the term is not used anywhere in Code § 523, as it

---

**1.** While Pisano's second cause of action relies upon the "cause" category of Code § 362(d)(1) in seeking relief from the automatic stay to allow the resumption of the state court action, the Court notes that no proof was submitted at trial on this issue. Hence, the Court cannot

make a determination if such relief is warranted in light of the bareness of the record to support an order lifting the stay and will proceed to adjudicate the instant adversary proceeding solely on the evidence presented concerning nondischargeability.

appears, for instance, in Code §§ 303(i)(2) and 362(h). *But see Kansas National Bank & Trust Co. v. Kroh (In re Kroh)*, 88 B.R. 972, 985–86 (Bankr.W.D.Mo.1988) (judgment for punitive damages held nondischargeable under Code § 523(a)(6) where extraordinary situation involving grand scheme of fraudulent misrepresentations caused losses of millions of dollars, state law supported punitive damages and Code § 726(a)(4) deferred distribution until all unsecured creditors' claims paid). Consequently, only that portion of the plaintiff's complaint seeking $15,000.00 in compensatory damages can be addressed by the Court in the case at bar.[2]

In addition, this Court has no jurisdiction to rule on the breach of an implied marriage contract and its enforceability under New York State law, notwithstanding considerations of comity and federalism. *See Northern Pipeline Const. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). Hence, Debtor's first affirmative defense has no impact in this proceeding. With regard to her second affirmative defense, the fact that the real estate may never have been purchased is relevant only insofar as it sheds light upon the alleged fraud and conversion of the $15,000.00. It cannot act to diminish Pisano's causes of action, defeat his recovery or shield the Debtor from the Court's scrutiny of the underlying circumstances giving rise to the adversary proceeding.

Exceptions to discharge should be narrowly construed in favor of the debtor and against the creditor to effectuate the fresh start purpose of the bankruptcy laws. *See Gleason v. Thaw*, 236 U.S. 558, 562, 35 S.Ct. 287, 289, 59 L.Ed. 717 (1915); *Fluehr v. Paolino (In re Paolino)*, 75 B.R. 641, 646 (Bankr.E.D.Pa.1987); *Gualtieri v. Goux (In re Goux)*, 72 B.R. 355, 357 (Bankr.N.D.N.Y.1987). The burden of

proof lies on the plaintiff to convince the Court that the true nature of the debt necessitates a finding of nondischargeability. *See Benich v. Benich (In re Benich)*, 811 F.2d 943, 945 (5th Cir.1987); *Danns v. Household Finance Corp. (In re Danns)*, 558 F.2d 114, 116 (2d Cir.1977); *cf. Brown v. Felsen*, 442 U.S. 127, 138, 99 S.Ct. 2205, 2212, 60 L.Ed.2d 767 (1979). Furthermore, dischargeability actions relating to fraud implicate the higher evidentiary standard of "clear and convincing." *See Tilbury v. Walden (In re Tilbury)*, 74 B.R. 73, 77 (Bankr. 9th Cir.1987) (finding of nondischargeability under Code § 523(a)(2)(A) and (a)(6)); *Schwalbe v. Gans (In re Gans)*, 75 B.R. 474, 482 (Bankr.S.D.N.Y.1987).

It is a fundamental precept of bankruptcy law that the court does not have the jurisdiction to determine the rights of non-debtors. This proceeding has been marked, from the start, by a confusion, perhaps deliberate, between the Debtor's actions and those of her daughter and son-in-law, both non-debtors, and the general use of terms of collaboration and agency in explanation thereof. The only way the $15,000.00 can be determined nondischargeable in the Debtor's Chapter 7 proceeding is if, by clear and convincing evidence, the Debtor's own actions, individually or in concert with those of her daughter's and son-in-law's under conspiracy or agency principles, satisfy the elements of Code § 523(a)(2)(A) or Code § 523(a)(6).

" 'Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act.' " *Pan American World Airways v. Shulman Transport Enterprises, Inc. (In re Shulman Transport Enterprises, Inc.)*, 744 F.2d 293, 295 (2d Cir.1984) (quoting

---

**2.** Assuming arguendo that Code § 523(a)(6) did encompass an award of punitive damages and that it was conclusively established that the $15,000.00 belonged to Pisano, the Court notes the lack of proof submitted to demonstrate that the Debtor's conduct was outrageous or that "the wrong done to him [Pisano] was aggravated by circumstances of violence, oppression, malice, fraud or wanton and wicked conduct on

the part of the defendant [Debtor], and [punitive damages] are intended to solace the plaintiff for mental anguish, laceration of his feelings, shame degradation, or other aggravations of the original wrong, or else to punish the defendant for [her] evil behavior" and for deterrence purposes. BLACK'S LAW DICTIONARY 352 (5th ed. 1979); *see also* RESTATEMENT (SECOND) OF TORTS § 908 (1979). *See infra.*

*Restatement (Second) of Agency* § 1(1) (1958)). The Court observes that under general agency theory, a principal is bound by the acts of his or her agent if the principal consents to the act in advance or ratifies it after the fact. *See* 3 Am.Jur.2d, Agency § 270 (1986). Additionally, where independent evidence supports an agency relationship, a close familial relationship is accorded significant weight toward establishing the agency relationship. *See Capital City Bank & Trust v. Kroh (In re Kroh)*, 88 B.R. 987, 993 (Bankr.W.D.Mo. 1988) (brothers).

However, the existence of an agent-principal relationship alone is insufficient to hold the principal liable for the agent's acts. *See In re Lovich*, 117 F.2d 612, 614–15 (2d Cir.1941). The agent's fraud will be imputed to the principal if the principal knew or should have known of the agent's fraud or will be inferred in the case of the principal's reckless indifference to his agent's acts. *See Walker v. Citizens State Bank of Maryville, Mo. (In re Walker)*, 726 F.2d 452, 454 (8th Cir.1984) (Code § 523(a)(2)(A)).

The nondischargeability of a fraud-related debt has been found if the principal-debtor participated in the benefits and possessed some separate culpability, even absent actual participation. *See La Trattoria, Inc. v. Lansford (In re Lansford)*, 822 F.2d 902 (9th Cir.1987) (Code § 523(a)(2)(B)). In a "conversion" context, the principal-debtor's active, substantial and continuing personal participation has supported the nondischargeability of the debt. *See Chrysler Credit Corp. v. Rebhan*, 842 F.2d 1257 (11th Cir.1988) (Code § 523(a)(6)); *Ford Motor Credit Co. v. Owens*, 807 F.2d 1556, 1559–60 (11th Cir.1987) (same). *See also Impulsora Del Territorio Sur, S.A. v. Cecchini (In re Cecchini)*, 772 F.2d 1493 (9th Cir.1985) (same).

■ Thus, assuming Jeanne was the Debtor's agent during the transfer of money on February 10, 1986 and the subsequent disbursement of funds through the Debtor's checking account, the Debtor could face a nondischargeable debt if the proof demonstrated some form of consent or ratification by the Debtor as principal and the applicable Code sections were then satisfied. *See, e.g., J.C. Penney Co. v. Love (In re Love)*, 47 B.R. 213, 215–216 (Bankr.W.D.Mo.1985) (Code § 523(a)(2)(A)); *Ford Motor Credit Co. v. Emporelli (In re Emporelli)*, 42 B.R. 814 (Bankr.W.D.Pa. 1984) (Code § 523(a)(6)).

However, the record, at best, thinly supports the existence of an informal agency relationship between the Debtor, as the agent, and her daughter, as the principal, as inferred through their familial "course of dealing." *See* 3 Am.Jur.2d, *supra,* at §§ 18, 21, 360, 362. This is so because the Debtor acted repeatedly for and on behalf of Jeanne, appeared to do so upon her direction and control and Jeanne was, as the checks indicate, the actual beneficiary of the $15,000.00. Thus, to hold the Debtor, the agent, potentially "liable" in the bankruptcy context for the acts of Jeanne, the principal, puts agency theory on its ear.

"The essence of a 'civil conspiracy' is a concert or combination to defraud or cause other injury to person or property, which results in *damage* to the person or property of plaintiff." BLACK'S LAW DICTIONARY, *supra,* at 281 (emphasis added). *See also* 16 Am.Jur.2d, Conspiracy §§ 49–56 (1979). There can be no liability for damages where unlawfulness is absent in the acts or means employed and the actionable wrong must be found to be jointly committed by two or more entities so that each's acts are imputed to the others through a common purpose and intent. *See id.* at § 70; *Newburger, Loeb & Co., Inc. v. Gross*, 563 F.2d 1057, 1074 (2d Cir. 1977) (citing to New York case law). Conspiracy sounds in tort and one of its elements may include a malicious intent or "an intentional interference with a right without lawful justification, rather than ill will or actual malice." *Id.* at §§ 50, 64.

Each conspirator is jointly and severally liable for the damages accruing subsequent to his joining the conspiracy, and liability for damages prior to his joining the conspiracy can only be found if the individual joined the conspiracy with knowledge of the unlawfulness of its object or of the

means contemplated. *See id.* at § 56. *See also Hadar Leasing International Co., Inc. v. D.H. Overmyer Telecasting Co. (In re D.H. Overmyer Telecasting Co., Inc.),* 53 B.R. 963, 981 (N.D.Ohio 1984). The plaintiff bears the burden of proof to establish the existence of a conspiracy and he can do so through direct or circumstantial evidence, the latter formed by reasonable deductions and natural inferences from the totality of facts and circumstances. *See id.* at § 68.

"Conspiracy" causes of action in bankruptcy frequently surface through Code § 523(a)(6) and are often the subject of abstention pursuant to 28 U.S.C.A. § 1334(c) because they usually involve non-debtor, co-conspirators and pre-petition state court proceedings. *See, e.g., In re Davis,* 91 B.R. 470 (Bankr.N.D.Ill 1988); *Braun v. Zarling (In re Zarling),* 85 B.R. 802 (Bankr.E.D.Wis. 1988). When abstention is not invoked by the court *sua sponte* or the litigants, as here, the dischargeability analysis hinges on the debtor's participation in the alleged conspiracy or enjoyment of benefits resulting thereof. *Cf. Chrysler Credit Corp. v. Rebhan, supra,* 842 F.2d at 1263; *American Bank of Raytown v. McCune (In re McCune),* 82 B.R. 510, 512 (Bankr.W.D.Mo.1987).

The evidence demonstrates the Debtor's substantial participation and active involvement with Jeanne in the transfer and disbursement of the $15,000.00 and her lack of benefit thereof. However, it does not support a finding that a scheme existed between the Debtor, Jeanne and Sherman to defraud Pisano.

Thus, the theories of agency or conspiracy are unavailing to Pisano in the instant proceeding.

Code § 523(a)(2)(A) requires five elements: 1) the debtor made representations, 2) which he knew at the time were false, 3) that were made with the intent to deceive the creditor, 4) that were relied upon by the creditor 5) to its detriment in sustaining damage in the alleged amount as the proximate result of representations. *See Thul v. Ophaug (In re Ophaug),* 827 F.2d 340, 342 n. 1 (8th Cir.1987); *Beneficial New York Inc. v. Bossard (In re Bossard),* 74 B.R. 730, 737 (Bankr.N.D.N.Y.1987). All elements must be met for a debt to be determined nondischargeable. *See United States v. Stelweck (In re Stelweck),* 86 B.R. 833, 846 (Bankr.E.D.Pa.1988). The general purpose of Code § 523(a)(2)(A) "is to prevent a debtor from retaining property acquired by fraud." *Id.* (citing to 3 L.King, COLLIER ON BANKRUPTCY ¶ 523.08[1] at 523–39 (15th ed. 1988)).

"As a matter of bankruptcy law, a debtor must ratify by positive act any fraud or misrepresentation." *In re Love,* 47 B.R. at 216. The record does not reveal any such positive act on the part of the Debtor. While Jeanne may have made false representations with regard to her intentions about the Clinton residence and her real estate knowledge and proceeded under false pretenses to bring about the transfer of money on February 10, 1986, there is, as indicated, no evidence to support the Debtor's conscious involvement. *See supra.* Moreover, the Debtor's disbursement of the funds from her checking account cannot alone constitute the requisite positive acts.

With regard to the "actual fraud" component of Code § 523(a)(2)(A), it must consist of "deceit, artifice, trick design, some direct and active operation of the mind [and] includes cases of the intentional and successful employment of any cunning, deception, or artifice used to circumvent or cheat another." BLACK'S LAW DICTIONARY, *supra,* at 595, *quoted in The Howard Bank v. Davis (In re Davis),* 11 B.R. 156, 158 (Bankr.D.Vt.1980). The evidence submitted does not justify such a finding.

Without positive acts of "false pretenses or false representation" or direct and active "actual fraud", the debt cannot be determined nondischargeable under Code § 523(a)(2)(A) in the Debtor's Chapter 7 proceeding.

The second ground upon which Pisano requests nondischargeability is Code § 523(a)(6), presumably based upon the willful and malicious conversion of his $15,-000.00. *See Beneficial New York Inc. v. Bossard (In re Bossard),* 74 B.R. 730, 736

(Bankr.N.D.N.Y.1987); 3 COLLIER ON BANKRUPTCY, *supra,* at ¶ 523.16. "[T]he conversion of another's property without justification and excuse, to the other's injury, is a willful and malicious injury within the meaning of the exception. On the other hand, a technical conversion may very well lack any element of willfulness or maliciousness necessary to except the liability from discharge." COLLIER ON BANKRUPTCY, *supra,* at ¶ 523–118.

■ While "willful" has been construed to signify an act done deliberately and intentionally, the meaning of "malicious" has been the subject of some debate. *See Chrysler Corp. v. Rebhan, supra,* 842 F.2d at 1262–63 (discussing three approaches with respect to "intent"). This Court finds the better view to be that "malicious" within the meaning of Code § 523(a)(6) means a wrongful act that causes harm, done consciously and knowingly without just cause or excuse. *See Perkins v. Scharffe,* 817 F.2d 392, 393 (6th Cir.1987) (quoting 3 COLLIER ON BANKRUPTCY, *supra,* at 523–1111); *In re Bossard, supra,* 74 B.R. at 736; *Car Village Buick–Opel, Inc. v. DeRosa (In re DeRosa),* 20 B.R. 307, 313 (Bankr.S.D.N.Y.1982). Thus, in order to prevail, Pisano must show that the Debtor, in her individual capacity, deliberately and intentionally converted the $15,000.00 *and* that she did so without just cause or excuse, consciously knowing that such taking was a wrongful act which would cause injury.

■ The record clearly demonstrates that on February 10, 1986 the Debtor deliberately and intentionally received from Pisano the sum of $15,000.00 and then deposited it into her checking account. However, the proof is not consistent in establishing that the transfer and subsequent disbursement of the money was a wrongful act—a conversion. Pisano claims that the sum represented his savings while the Debtor argues that the money was her daughter's being held by Pisano. Yet, there is Pisano's statement to Jeanne as the trio left the bank on February 10, 1986 that he was keeping the money for her and the Debtor's uncontroverted statement in her answer that the transfer took place with his express consent and approval. Furthermore, the evidence suggests that Pisano gave the money to Jeanne for the care of herself and the three children.

Consequently, the record does not disclose by a clear and convincing standard that the Debtor committed the wrongful act of conversion with the requisite consciousness and knowledge and that the transfer and use of the funds occurred without Pisano's knowledge or consent. Moreover, the Court cannot but consider the "just cause" generated by a grandmother's concern for the well-being of her grandchildren, whatever their lineage, and the guarded curiousity a mother must often exercise with respect to her daughter's affairs, which necessarily limits the mother's knowledge. Thus, a determination of nondischargeability under Code § 523(a)(6) as to the Debtor individually cannot be sustained, notwithstanding the very real possibility, bolstered by the insincere demeanor of the Debtor and her daughter at trial, that a technical conversion transpired.

Code § 523(d) was originally enacted in 1978 to protect an honest consumer debtor who, from apprehension of incurring attorney's fees, would rush to settle with a financially sound creditor seeking an exception of its debt from the discharge on the basis of falsity. *See* H.R.Rep. No. 595, 95th Cong., 1st Sess. 365 *reprinted in* 1978 U.S.CODE CONG. & ADMIN.NEWS 5787, 5963, 6321; *Walter v. Walter (In re Walter),* 50 B.R. 521, 522 (Bankr.D.Del.1985). It shares common conceptual ground with Bankr.R. 9011(a) inasmuch as both are directed at curbing the filing of pleadings which are either unsupported by existing law or unaccompanied by a good faith argument for its extension, modification or reversal. *See Household Finance Co. v. Beam (In re Beam),* 73 B.R. 434, 438 (Bankr.S.D.Ohio 1987); *Associates Professional Executive Serv., Inc. v. Bernard (In re Bernard),* 85 B.R. 864, 867 (Bankr. D.Colo.1988).

While retaining the mandatory language of "shall", the 1984 amendments to Code § 523(d) increased the court's discretion in

denying an award of attorney's fees by focusing on whether the creditor's position was "substantially justified" based upon a standard of "reasonableness." *See* 3 Bkr–L Ed, CODE COMMENTARY AND ANALYSIS § 22:91 at 167 (Oct.1988 Supp.) (citing to S.Rep. No. 65, 98th Cong., 1st Sess. 9, 59). *See also Citizens National Bank v. Burns (In re Burns)*, 77 B.R. 822, 823 (D.Colo.1987) (citing *Household Finance Corp. v. VanBuren (In re VanBuren)*, 66 B.R. 422, 424–25 (Bankr.S.D.Ohio 1986)).

> "[I]t is far easier for the creditor to demonstrate the reasonableness of its action than it is for the debtor to marshal the facts to prove that the creditor was unreasonable ... The standard, however, should not be read to raise a presumption that the creditor was not substantially justified, simply because it lost the challenge."

3 Bkr–L Ed, *supra*, at § 22:91. *See also In re Walter, supra*, 50 B.R. at 523. *See, e.g., Manufacturers Hanover Trust Co. v. Hudgins*, 72 B.R. 214, 220–21 (N.D.Ill. 1987) (award of attorney's fees granted where the creditor proceeds to trial knowing that it lacks the sufficient evidence to sustain its burden of proof and then fails to establish a necessary element of its claim, notwithstanding it having originally commenced the suit in good faith); *In re Bernard, supra*, 85 B.R. at 867 (attorney's fees granted where plaintiff and his counsel did not appear on the scheduled trial date).

The Court finds that while Pisano, the Debtor's de facto son-in-law for over a decade, may not be the typical creditor seeking the nondischargeability of a debt under Code § 523(a)(2), the debt in question is a consumer debt within the meaning of Code § 101(7) since the Debtor's checks indicate that the $15,000.00 was utilized by Jeanne primarily for her family's personal and household needs. However, the Court, in its discretion, sees fit to deny the defendant's request for costs and fees pursuant to Code § 523(d). The Court finds that although on the record Pisano's position was not substantially justified with regard to the Debtor, the questionable tes-

timony of both the Debtor and her daughter and the special circumstances of this "affair of a broken heart" would render such costs unjust and inequitable.

Furthermore, an award of attorney's fees here would not further the statute's purpose to "level the playing field" between unequally positioned litigants so as to deter abuse of the bankruptcy laws and its spirit. *See In re Walter, supra*, 50 B.R. at 523. Pisano and the Debtor appear to be evenly matched adversaries with similar limited resources and the record discloses no abuse. Accordingly, the Court need not address the plaintiff's substantive criticisms of the Debtor's counsel's application for compensation.

By reason of the foregoing, it is hereby ORDERED:

1. That Pisano's first cause of action, pursuant to Code § 523(a)(2)(A) and (a)(6), is dismissed.

2. That Pisano's second cause of action, with regard to relief from the automatic stay, is denied without prejudice to renewal.

3. That the Debtor's request for costs and fees pursuant to Code § 523(d) is denied.