In re David F. MANNING and Monika
A. Manning, Debtors.

DOMINION BANK OF MIDDLE
TENNESSEE, Appellant,

v.

David F. MANNING and Monika A.
Manning, Appellees.

David F. MANNING and Monika A.
Manning, Appellants,

v.

UNITED STATES TRUSTEE, Appellee.

Bankruptcy Nos. 3:91–0007, 3:91–0006.

United States District Court,
M.D. Tennessee,
Nashville Division.

April 26, 1991.

Roger G. Jones, Barbara Holmes, Asst. U.S. Trustee, Boult, Cummings, Conners & Berry, Nashville, Tenn., for Dominion Bank of Middle Tennessee.

Robert H. Waldschmidt, Howell, Fisher & Branham, Nashville, Tenn., for David F. Manning and Monika A. Manning.

## MEMORANDUM

WISEMAN, Chief Judge.

On March 25, 1991, the Court heard oral arguments on the consolidated appeals of the Mannings against the U.S. Trustee and Dominion Bank against the Mannings. The appeals stem from the Bankruptcy Court's dismissal of the Mannings' Chapter 7 bankruptcy petition under 11 U.S.C. § 707(b) and the Bankruptcy Court's denial of Dominion Bank's motion to dismiss under 11 U.S.C. § 707(a). At the conclusion of the March 25 hearing, the Court reversed the Bankruptcy Court's decision granting the Trustee's motion to dismiss under § 707(b) and reversed and remanded the Bankruptcy Court's decision denying Dominion Bank's motion to dismiss under § 707(a). The Court now issues this Memorandum explaining its ruling from the bench.

### I.

The Mannings filed a voluntary petition under Chapter 7 of the Bankruptcy Code on June 7, 1990. Subsequent to the meeting of the creditors, Dominion Bank filed a motion to convert the proceeding to Chapter 11, asserting the Mannings could repay a substantial portion of their indebtedness from their annual income. In the alternative, Dominion Bank asserted that the bankruptcy proceeding was not filed in good faith and, therefore, should be dismissed under 11 U.S.C. § 707(a).[1] The Trustee then filed a motion to dismiss under 11 U.S.C. § 707(b)[2], asserting that this Chapter 7 proceeding constitutes a substantial abuse of Chapter 7 provisions. After hearing testimony from Mr. Manning, his state court counsel and accountant, an officer of Dominion Bank, and the expert testimony of the Chapter 13 Standing Trustee for the Middle District of Tennessee, Judge Lundin ruled from the bench on November 7, 1990, denying Dominion Bank's motion to convert or to dismiss under § 707(a), but granting the Trustee's motion to dismiss

---

**1.** 11 U.S.C. § 707(a) (1990) provides the following:

 (a) The court may dismiss a case under this chapter only after notice and a hearing and only for cause, including—

 (1) unreasonable delay by the debtor that is prejudicial to creditors;

 (2) nonpayment of any fees or charges required under chapter 123 of title 28; and

 (3) failure of the debtor in a voluntary case to file, within fifteen days or such additional time as the court may allow after the filing of the petition commencing such case, the information required by paragraph (1) of section 521, but only on a motion by the United States trustee.

**2.** 11 U.S.C. § 707(b) (1990) provides the following:

 (b) After notice and a hearing, the court, on its own motion or on a motion by the United States Trustee, but not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor.

under § 707(b). Judge Lundin did not reach the merits of Dominion Bank's motion to dismiss.

## II.

David Manning is employed by CapStar Communications as an executive vice-president and chief operating officer (more commonly referred to as general manager) of WSIX–AM/FM radio station. According to the terms of his employment contract, Manning's compensation benefits include: (1) annual salary of approximately $156,000 as of November 1990; (2) an annual incentive bonus equal to one-third of his basic compensation if WSIX–AM/FM meets its budgeted cash flow; (3) an additional annual incentive bonus equal to five percent of any broadcast cash flow in excess of the budgeted cash flow; (4) a monthly car allowance of $1,400.00; (5) reimbursement for travel, entertainment and other business expenses; and (6) disability insurance providing a benefit up to fifty percent of Manning's salary. Monika Manning works three days per week as a receptionist for Campbell Realtors and has monthly take-home pay of approximately $400.00.

The total debt involved in this Chapter 7 proceeding approximates $950,000.00. The parties agree that the only debts relevant to this appeal are the following:

| | | |
|---|---:|---|
| Dominion Bank | $305,847.00 | (limited partnerships) |
| Dominion Bank | 63,644.00 | (Granny's) |
| Capitol Chevrolet Leasing | 55,000.00 | (Five Star Limousine) |
| Old Hickory Credit Union | 80,000.00 | (1st mortgage/day care) |
| Metropolitan Federal | 80,000.00 | (2nd mortgage/day care) |
| Metropolitan Federal | 18,798.00 | (reduce Dominion debt) |
| Metropolitan Federal | 100,000.00 | (2nd mortgage/house) |
| Mercedes Benz Credit | 60,000.00 | (lease of vehicle) |

Determination of the Trustee's appeal hinges primarily on the nature and purpose of the primary obligations scheduled by the Mannings in their bankruptcy petition. The Court will turn first to the Trustee's appeal and then to Dominion Bank's appeal.

## III.

Judge Lundin recognized that he had to make three findings before dismissing the Mannings' petition under § 707(b): (1) that the Mannings are individual debtors; (2) that the debts included in the bankruptcy proceeding are "primarily consumer debts"; and (3) that the granting of relief would constitute a "substantial abuse" of the provisions of Chapter 7. The Mannings dispute Judge Lundin's second and third findings. Because the Court disagrees with Judge Lundin's second finding, the Court reverses Judge Lundin's dismissal under § 707(b) without addressing whether this Chapter 7 proceeding constitutes a substantial abuse of the bankruptcy provisions.

The Mannings take issue with Judge Lundin's classification of three debts. First Judge Lundin held that an obligation incurred by the Mannings to purchase five limited partnership interests, which the Mannings claim they used only as tax shelters and not for income, was a consumer debt. Second, he found that the debts incurred to purchase commercial property to be used as a day care center, which the Mannings depreciated on their tax returns, were consumer debts. Finally, he found that most of the funds borrowed from Metropolitan Federal to reduce the indebtedness on the Mannings' "investment loans" and to guarantee corporate obligations were consumer debts. Were these three amounts to be classified as non-consumer debts, the total amount of debts would not be "primarily consumer" because at least 65% would be non-consumer.

The Mannings argue Judge Lundin erred in equating "investment debts" with "con-

sumer debts".[3] The Bankruptcy Code defines "consumer debt" as "debt incurred by an individual primarily for a personal, family, or household purpose." 11 U.S.C. § 101(8) (1990). Because this definition is not especially helpful on its face, Judge Lundin adopted the approach of the Ninth Circuit Court of Appeals in *Thorns v. Sundance Properties*, 726 F.2d 1417 (9th Cir. 1984), and referred to the definition of consumer debt in the Truth in Lending Act ("TILA") and 12 C.F.R. § 226.3 ("Regulation Z"). In *Thorns* the Ninth Circuit reversed a district court ruling that a loan for the purpose of purchasing a limited partnership interest for investment was exempt from TILA disclosure because it necessarily involved a business or commercial purpose. The Ninth Circuit explained that "[p]urchase of a limited partnership interest for investment purposes ... can be for personal as opposed to a business or commercial purpose under the TILA.... Whether an investment loan is for a personal or a business purpose requires a case by case analysis." *Id.* at 1418–19. According to the Ninth Circuit, to determine whether a debt is incurred primarily for business or for consumer/personal purposes, courts should apply the factors promulgated by the Federal Reserve Board and listed in Regulation Z:

> In determining whether credit to finance an acquisition—such as securities, antiques, or art—is primarily for business or commercial purposes (as opposed to a consumer purpose), the following factors should be considered:
> (1) The relationship of the borrower's primary occupation to the acquisition. The more closely related, the more likely it is to be business purpose.
> (2) The degree to which the borrower will personally manage the acquisition. The more personal involvement there is, the more likely it is to be business purpose.
> (3) The ratio of income from the acquisition to the total income of the borrower.

The higher the ratio, the more likely it is to be business purpose.
(4) The size of the transaction. The larger the transaction, the more likely it is to be business purpose.
(5) The borrower's statement of purpose for the loan.

12 C.F.R. § 226 Supp. 1, § 226.3(a)(2) (1983).

Judge Lundin analyzed the Mannings' debts "debt-by-debt" applying the Regulation Z factors. With respect to the $300,000–plus Dominion Bank debt incurred in investing in the limited partnerships, the Bankruptcy Court found important that Manning did not participate in management or operations of the limited partnerships; that he had no knowledge of who ran the businesses; that he had no business bank accounts; and that the limited partnerships had no relationship to Manning's primary occupation as general manager of a radio station. One Regulation Z criteria suggesting a business purpose was the large size of the transaction. Despite the fact that this debt represented approximately one-third of all Manning's debt, the Bankruptcy Court found "overwhelming evidence that these were not business enterprises for [Manning]." Transcript at 12. Rather, "[t]hese are the purest forms of investments ... I think he was quite clear that his business is being the manager of a radio station, and he had these investments. They can only be for personal, family purposes to shelter other income.... There is no engaged-in-business aspect to this particular debtor's investment in these limited partnerships." *Id.* at 10–11.

The Bankruptcy Court also deemed the debt incurred to purchase the day care property consumer debt. "He [Manning] said he bought it because she [his sister] couldn't afford to buy it and operate as a day care center, so he bought it for her. That's a family purpose. He did not intend to manage it ... [or] to operate it. And as

---

**3.** However, at page 4 of the transcript of the Bankruptcy Court's hearing, Judge Lundin states that "[t]here can be no *per se* rule about investments. If an investment was always a business debt or always a personal debt, we immediately run into all sorts on conundrums. It just doesn't work."

he testified, 'it is not my business.' ... He's not interested in it for income purposes." *Id.* at 13. Judge Lundin found Manning had no personal involvement in the property. Moreover, his primary occupation had nothing to do with the day care center or the property. Finally, in contrast to the limited partnership investments, the size of the transaction was less persuasive in suggesting the day care property was a business investment.

The Mannings also object to Judge Lundin's classification of the Metropolitan Federal loans as consumer debts. Metropolitan Federal has a second mortgage on the day care center securing an $80,000 loan and a second mortgage on the Mannings' residence securing an $100,000 loan. Metropolitan Federal also loaned the Mannings another $18,798. The Mannings contend they borrowed all this money to reduce their indebtedness to Dominion Bank and, therefore, the debt was incurred for a business or investment purpose. Judge Lundin found $30,000 of these loans went towards a business operation (debtors' Granny's salad dressing company), making this amount non-consumer debt, but treated the remaining debts as consumer, reasoning they were funds used to service other personal debts (the limited partnerships and the day care property). Judge Lundin concluded that "a *prima facie* case was made that it [all but $30,000] was merely an additional borrowing for personal purposes." *Id.* at 15.

### A.

■ Assuming for the moment that application of the Regulation Z factors is proper in this case, the Court is not convinced that Judge Lundin correctly applied them. Undoubtedly three of the five factors weigh heavily in favor of the debts being classified as consumer. Manning's primary occupation is not related at all to management of limited partnership units or commercial day care property. Manning has had little, if any, personal involvement in the management of the limited partnerships and the day care property. Moreover, neither investment made significant, if any, income for the Mannings. However, the other two factors weigh heavily in favor of the debts (especially the Dominion Bank debt) being classified as business or commercial. The larger the transaction involved, the more likely the debt was incurred for a business purpose. The Dominion Bank loans to the Mannings for investment in the limited partnerships account for approximately one-third of the Mannings' total debt. Moreover, the limited partnership investments, even taken individually, as well as the day care investment, all exceed the transaction maximum set forth in the TILA:

■ This subchapter does not apply to the following:

 \* \* \* \* \* \*

(3) Credit transactions, other than those in which a security interest is or will be acquired in real property, or in personal property used or expected to be used as the principal dwelling of the consumer, in which the total amount financed exceeds $25,000.

15 U.S.C. § 1603. The Court also must consider the Mannings' statement of purpose for the loans to purchase the limited partnership interests and the day care property. Manning purchased the partnership interests for the tax benefits. He purchased the day care property as an investment. On Manning's 1988 and 1989 tax returns he depreciated the day care property and deducted the interest. These loans were not procured *primarily* for a personal, family, or household purpose.[4]

Therefore, even though three of the Regulation Z factors support the Bankruptcy Court's finding that the Mannings have "primarily consumer" debts, the other two factors tip the scale more closely toward the debts being "primarily non-consumer". This resolution makes common sense. Most of the Mannings' debt to Metropolitan Federal represents their attempt to pay off

---

**4.** The record shows that Manning's sister operates the day care center and pays "rent" to Manning. However, this fact alone does not establish that Manning's primary purpose in purchasing the property was "personal" or "family".

the Dominion Bank limited partnership debt, and the Mannings did not purchase the partnership units or the day care property primarily for personal or family use. No *consumption* was contemplated.

## B.

Even assuming the Bankruptcy Court correctly applied the TILA approach in determining the nature of the Mannings' debts, the Court still must reverse Judge Lundin's dismissal under § 707(b). The Court has considered the legislative history of the Bankruptcy Code's definition of "consumer debt"[5] and the fact that § 707(b) was one of several consumer credit amendments added to the Bankruptcy Code in 1984. Moreover, the Court recognizes that the language used in § 101(7) of the Bankruptcy Code is virtually identical to language found in the TILA definition of "consumer".[6] The Court even accepts the Trustee's position that because "Congress has already determined that the consumer protection laws are appropriate *guideposts* for defining consumer debt as it is used in the Bankruptcy Code ...[,] [t]here is no basis for reliance upon any other statutes." Trustee's Appellee Brief at 18 (emphasis added).

■ The debts at issue in this case are *investment* debts. After much consideration this Court has concluded that the TILA and the Regulation Z factors are inappropriate guideposts when their application classifies a purely investment debt as a consumer debt. To hold that an investment debt may be classified as a consumer debt would stand the English language on its ear. "Consumption" is the antithesis of "investment." Expenditures (loans for such expenditures) for the purpose of personal, family or household "con-

sumption" are for necessities or luxuries in daily existence. "Investment," on the other hand, *by definition*, is an expenditure today for an expected return in the future. The return could take many forms. Here it was a tax write-off against other income. The enhanced retained monies are, nevertheless, a return on investment.

The Court acknowledges that the Ninth Circuit in *Thorns* did not hold that investment transactions are *per se* consumer transactions. Rather, the *Thorns* court stated that, "in *some circumstances*, a loan for the purpose of purchasing a limited partnership interest for investment may be covered by the TILA [i.e., may be primarily for a consumer purpose]." *Thorns*, 726 F.2d at 1419 (emphasis added). Contrary to the Ninth Circuit, this Court holds that *under no circumstances* may a loan procured to purchase a limited partnership interest or commercial real estate *for investment* be held to be for a "consumer" purpose.

Neither the limited partnership units nor the day care center were used by Mr. or Mrs. Manning in any capacity as "consumers". The interest incurred on the limited partnership debts was, to the extent allowable by law, deducted by the Mannings, and the unrebutted proof was that the tax benefits were the primary reason behind the purchase of the limited partnerships. Likewise, the day care center was depreciated by the Mannings and the interest payments were deducted on the Mannings' 1988 and 1989 tax returns. Therefore, the Mannings are not consumer debtors within the meaning of 11 U.S.C. § 707(b). Consequently, because dismissal under § 707(b) requires a finding that the debtors have "primarily consumer debts", the Bankrupt-

---

**5.** The legislative history of 11 U.S.C. § 101(7) states the following:

Paragraph (7) defines "consumer debt". *The definition is adapted from the definition used in various consumer protection laws.* It encompasses *only* a debt incurred by an individual primarily for a personal, family, or household purpose.

Emphasis added.

**6.** The TILA defines "consumer" as follows:

The adjective "consumer", used with reference to a credit transaction, characterizes the transaction as one in which the party to whom credit is offered or extended is a natural person, and the money, property, or services which are the subject of the transaction are *primarily for personal, family, household, or agricultural purposes.*

15 U.S.C. § 1602(h) (emphasis added). *See also* 15 U.S.C. § 1692a(5) and 15 U.S.C. § 1693a(2).

cy Court erred in dismissing the Mannings' petition under § 707(b).

### IV.

 When Judge Lundin granted the Trustee's motion to dismiss under § 707(b), he denied Dominion Bank's motion to dismiss under § 707(a), stating that he was "not going to address the analysis under 707(a) or under the conversion to Chapter 11 request that were in the alternative." Transcript at 1. The Court reverses Judge Lundin's denial of Dominion Bank's motion to dismiss.

Bankr.Rule 7052, governing findings by the court, provides that Fed.R.Civ.P. 52 applies in adversary proceedings. Bankr. Rule 9014 provides that Bankr.Rule 7052 is applicable in contested matters raised by motions. Therefore, Judge Lundin's findings in this case are governed by Fed.R. Civ.P. 52. That Rule requires the Bankruptcy Court, acting as the trier of fact, to *"find the facts specially and state separately its conclusions of law thereon...."* Emphasis added. Even assuming that Judge Lundin's fact finding presents evidence sufficient to convince this Court that "cause" existed to dismiss the Mannings' petition under § 707(a), Judge Lundin failed to state separately his conclusions of law mandating denial of the motion. Therefore, the only appropriate solution is to remand Dominion Bank's motion to dismiss under § 707(a) to the Bankruptcy Court for specific findings of fact and conclusions of law. Only upon appeal of these findings would the matter be appropriately reviewable by this Court.

### V.

For the foregoing reasons, the Court REVERSES the Bankruptcy Court's dismissal of the Mannings' Chapter 7 petition under 11 U.S.C. § 707(b). The Court also REVERSES the Bankruptcy Court's denial of Dominion Bank's motion to dismiss under 11 U.S.C. § 707(a) and REMANDS this matter to the Bankruptcy Court with the instruction that the Bankruptcy Court make specific findings of fact and conclusions of law.