James Cecil **BENNETT** and Jane Vern Bennett, Appellants,

v.

Maurice **LUKENS**, Jr., Appellee.

No. IP 89–935–C.

United States District Court, S.D. Indiana, Indianapolis Division.

Sept. 3, 1991.

Louis Rosenberg, Indianapolis, Ind., for appellants.

Michael D. Peyton, Indianapolis, Ind., for appellee.

BARKER, District Judge.

The Bennetts appeal the bankruptcy court's order denying their motion for attorneys' fees. Upon review of the record, we REVERSE the order of the bankruptcy court, and REMAND this case with the instructions that the bankruptcy court determine the amount of attorneys' fees due the Bennetts.

## I. Background

Martin and Elizabeth Edwards and James and Jean Bennett sold Maurice Lukens, a timber buyer, 53 trees; through error, 14 of the trees belonged to a neighbor and were on the neighbor's property. After Lukens cut down the trees, the owners of the 14 trees sued Lukens, and Lukens in turn sued the Edwardses and Bennetts.

The Bennetts, having recently discharged their debts in bankruptcy, reopened bankruptcy proceedings to include any debt arising from the sale of the 14 trees. Lukens filed a complaint in bankruptcy to determine the dischargeability of the alleged tree debt, claiming fraud or misrepresentation.

The bankruptcy court allowed the action to proceed in state court, and the state court eventually entered judgment in favor of the Bennetts, finding the alleged tree debt without merit and dischargeable. The bankruptcy court accordingly dismissed Lukens' complaint.

The Bennetts filed a motion for attorneys' fees under 11 U.S.C. § 523(d), but the bankruptcy court denied the motion stating that the alleged tree debt was not a consumer debt within the meaning of 11 U.S.C. § 101(7). The Bennetts filed this appeal claiming (1) the bankruptcy court erred by considering more than just the activities and purposes of the debtor and (2) the bankruptcy court misapplied the phrase "business transaction with a profit motive."

## II. Discussion

A debtor who prevails in an action contesting the dischargeability of a consumer debt under 11 U.S.C. § 523(a)(2) is entitled, absent a resulting inequity, to reasonable attorneys' fees. 11 U.S.C. § 523(d) (1979).[1] Whether a bankruptcy court correctly classified a debt consumer or commercial is a legal inquiry and subject to a *de novo* review. *Palermo v. First Nat. Bank & Trust*, 894 F.2d 363 (10th Cir. 1990); *see In re Booth*, 858 F.2d 1051, 1053 n. 5 (5th Cir.1988).

A consumer debt is a "debt incurred by an individual primarily for a personal, family, or household purpose." 11 U.S.C. § 101(7) (1979).[2] A debt is a business debt, as compared to a debt acquired for a personal, family, or household purpose, when it is "incurred with an eye toward profit."

---

1. The operative, pre–1984 version of § 523(d) does not require a creditor's claim of fraud or misrepresentation be without substantial justification.

2. Section 101(7) is currently codified at 11 U.S.C. § 101(8) (1991).

*In re Booth*, 858 F.2d at 1055; *see Palermo v. First Nat. Bank & Trust*, 894 F.2d at 363; *In re Kelly*, 841 F.2d 908, 913 (9th Cir.1988). For example, in *In re Booth*, the court held that a loan incurred to pay a mortgage was a consumer debt, but a loan incurred for a business venture was a nonconsumer debt. *Id.; see In re Kelly*, 841 F.2d at 913 (court found it "difficult to conceive of any expenditure that serves a 'family ... or household purpose' more directly than does the purchase of a home" but a "[d]ebt incurred for business ventures or other profit seeking activities is plainly not consumer debt").

The Bennetts were enlisted to assist Elizabeth Edwards, Jean Bennett's sister, in selling the timber. In doing so, they performed the task "just as a family favor," without thought of "any kind of pay or compensation." Deposition of Martin K. Edwards, p. 64. The Bennetts had no profit motive in selling the timber. They merely helped the Edwardses sell the timber because Martin Edwards was at the time in jail and needed to sell the timber to "raise money for the family." Affidavit of Elizabeth Ann Edwards, p. 2. Clearly, the Bennetts and Edwardses one-time sale of timber was not a business venture but the act of a family pulling together in a time of need.

Lukens argues that since the two households are separate, connected only by a sister relationship between the two women, this was not a "family ... purpose" debt, citing *In re Bernstein*, 71 B.R. 259, 260 (S.D.Fla.1987). In *In re Bernstein*, when a father incurred a loan to assist his adult son defend fraud charges, the court found that "family" in the context of § 101(7) does not include an adult son or a family member not residing in the same household. *Id.* In response, the Bennetts cited *In re Verdon*, 95 B.R. 877 (N.D.N.Y.1989), where the court found a family purpose when a mother incurred debt to give money to her adult, non-resident daughter. Arriving at inapposite conclusions, neither case provides a rationale for applying its restrictive or broad understanding of the term "family" in the context of § 101(7).

However, this court is persuaded by the analysis in *In re Manning*, 126 B.R. 984 (M.D.Tenn.1991), where the bankruptcy court's decision turned on the application of the purpose or profit test. In *In re Manning*, an executive vice-president of a radio station had bought his non-resident sister a day care center. After the bankruptcy court initially found that the brother incurred the debt for a family purpose, the bankruptcy court reversed its holding, stating that the brother/sister relationship may establish a family purpose, but the critical inquiry was why the brother bought the day care center; in *In re Manning*, it was found to have been for the purpose of achieving a tax benefit. Thus, the court found the debt had an investment, not family, purpose and denied attorney's fees under § 523(d). *Id.* at 988, n. 4.

Contrary to the brother's purpose in *In re Manning*, the Bennetts had no profit or investment motive when they helped their sister sell the timber. This court thus finds that any alleged debt the Bennetts incurred was for a family purpose. Although there is no allegation of bad faith on the part of Lukens,[3] the bankruptcy court should have held that the Bennetts' efforts to help their sister generated an alleged consumer debt.

### III.  Conclusion

Accordingly, we reverse the bankruptcy court's finding that the debt in question was not a consumer debt under § 523(d), and remand this case with instructions that the amount of reasonable attorneys' fees due the Bennetts be determined and ordered payable to them.

It is so ORDERED.

---

**3.** Section 523(d) was enacted to curb the abusive practices of consumer finance companies "who often filed bad faith dischargeability actions in the knowledge that the financially straitened debtor would be forced to settle the claim, rather than [bear] the expense of a trial on the merits." *In re Fox*, 725 F.2d 661, 663 (11th Cir.1984); *see In re Jordan*, 927 F.2d 221, 227 (5th Cir.1991); *In re Martin*, 761 F.2d 1163, 1168 (6th Cir.1985).